UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1 DONALD CLIFTON ALLEN, JR.,

    Defendant.
_____/

Case No. 12-20298

Hon. John Corbett O'Meara

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS**

Before the court is Defendant's motion to suppress. The court held an evidentiary hearing on March 20, 2014. Defendant filed a supplemental brief on May 22, 2014; the government filed a supplemental response on June 20, 2014. For the reasons explained below, Defendant's motion is denied.

**BACKGROUND FACTS**

Defendant Donald Clifton Allen, Jr., has been charged in the First Superseding Indictment as follows: Count 1, transportation of a minor for criminal sexual activity; Count 2, transportation for criminal sexual activity; Count 3, sexual exploitation of children/production of child sexually abusive material; and Count 4, possession of child pornography.

In June 2009, Allen stayed at the condominium of Yun Chong Hindy for about two weeks. On June 22, 2009, Hindy was arrested for drunk driving in Troy, Michigan. Allen and Jennifer Nelson were passengers in the car. After Hindy was asked to step out of the vehicle, she told the officer that she wanted to "get away from" Allen, and that Nelson, who was wearing "night club attire," was a prostitute. TR at 10-12. Nelson, who was later determined to be seventeen years old, told officers that she "worked for" Allen. Id. at 14. Allen was taken into custody based upon outstanding Friend of the Court warrants. Id. at 23.

After failing field sobriety tests, Hindy was also arrested and taken to the police station. In a later interview with Troy Police detectives, Hindy stated that Allen had been staying with her for a "few weeks." She said that the room in which Allen was staying contained personal items of hers and she maintained complete access to the entire premises. The only items Hindy said that Allen brought were clothing in duffle bags. Hindy provided an air mattress for Allen to sleep on.

Hindy stated that she regularly smelled burning marijuana from the bedroom. She thought Allen was selling marijuana from the bedroom because people would come over, go to the bedroom, stay for a short while, and then leave. See TR at 27-28.

Hindy told the detectives that, shortly after Allen arrived, Jennifer Nelson also began staying at her condo. Hindy said that, on several occasions, unknown men would arrive at the condo and that Allen would leave the premises, leaving Nelson and the unknown male in the bedroom. Id. Hindy believed that Allen was pandering women for prostitution; he told her that he advertised his prostitution business in the Metro Times. TR at 28-29.

Hindy told the detectives that her "main objective was to get Mr. Allen out of her condo. . . . She wanted us to . . . take all his stuff and put it at the curb." TR at 29. She requested that her apartment be searched for narcotics, signed a consent form, and provided keys to the police. TR at 30-31.

On June 22, 2009, Troy police searched Hindy's apartment and seized marijuana, a video recorder, cell phones, and two laptops. The video recorder and cell phones were on a table in the bedroom where Allen had been sleeping. An officer turned on the video recorder and viewed approximately two minutes of footage in an attempt to determine ownership of the video recorder. The officers found one laptop on the air mattress and another in a backpack.

Hindy called the police on June 24, 2009, stating that she had found two additional laptops in her apartment; she requested that the police confiscate them. The police obtained a search warrant for the video camera and computers on June

24, 2009. The subsequent search of those devices revealed evidence of child pornography and prostitution-related offenses.

## LAW AND ANALYSIS

"Because Fourth Amendment rights are 'personal,' the central inquiry in any suppression hearing is whether the defendant challenging the admission of evidence has shown a legitimate expectation of privacy in the place searched or the thing seized." United States v. Waller, 426 F.3d 838, 843 (6th Cir. 2005) (citation omitted). "We employ a two-part inquiry for determining whether a legitimate expectation of privacy exists: First, we ask whether the individual, by conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private . . . . Second, we inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." Id. (citations omitted).

> In making this determination, we consider the person's proprietary or possessory interest in the place to be searched or item to be seized; whether the defendant has the right to exclude others from the place in question; whether he has taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises.

Id. (citations omitted). The court considers a defendant's legitimate expectation of

privacy on a "case-by-case basis." Id.

The court finds that Defendant did not have a reasonable expectation of privacy in Hindy's home. Although she initially allowed Defendant to stay, she changed her mind after observing his activities and told the detectives that she wanted them to evict him. At the time of the search, Defendant was no longer on the premises legitimately. Prior to that, Defendant had stayed for a relatively short period of time and did not take normal precautions to maintain his privacy. He allowed men to stay in the bedroom with Nelson – whom he had known for less than a month – when he was not on the premises, which is inconsistent with an expectation of privacy. The bedroom was not locked and most of the items seized were in plain view, were not secured in any way, and were readily accessible. Hindy stated that she maintained access to the bedroom, which is supported by Officer Jones's testimony that the nightstand and closet appeared to contain items belonging to her. TR at 30, 32-33, 54-55.

The facts here are similar to those in United States v. Fay, 410 F.3d 589 (9th Cir. 2005), in which "a householder wanted illegal property out of her home." Id. at 590. The court found that a houseguest did not have a reasonable expectation of privacy in an open bag placed on a laundry room shelf, which was accessible to anyone in the home. The concurring opinion further noted that "[a] person cannot

-5-

disable his host from bringing criminal proceeds or paraphernalia or weapons to the attention of the police nor invoke the Fourth Amendment when his host seeks to disassociate herself from his criminal conduct by summoning police assistance." Id.

## **ORDER**

IT IS HEREBY ORDERED that Defendant's motion to suppress is DENIED.

s/John Corbett O'Meara<br>United States District Judge

Date:  September 4, 2014


I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, September 4, 2014, using the ECF system.

s/William Barkholz<br>Case Manager